UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH DINGLE,<br><br>        *Plaintiff*,<br><br>-against-<br><br>RIVERBAY CORPORATION,<br><br>        *Defendant.* | 21-CV-01349 (ALC) (JLC)<br><br><u>OPINION</u> |

**ANDREW L. CARTER, JR., District Judge:**

  Plaintiff Joseph Dingle filed this action against his former employer Defendant Riverbay Corporation, alleging adverse employment actions, disparate treatment and a hostile work environment based on Title VII, 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). ECF No. 1, Compl. Plaintiff is an African American male formerly employed by Riverbay as a Probationary Lobby Attendant. *Id.* Defendant moved for summary judgment on March 3, 2023. ECF No. 52. Defendant's motion for summary judgment is hereby **GRANTED** in full.

BACKGROUND

  **I.  Statement of Facts**[1]

---

[1] Because there is no testimony or admissible evidence to support various statements set forth in Plaintiff's counterstatement, and the counterstatement is replete with legal conclusions and argumentative statements rather than facts, it is improper for the Court to consider certain paragraphs in determining this summary judgment motion. *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 838-39 (S.D.N.Y. 2018). Local Civil Rules 56.1(a) and 56.1(d) require that any statement made pursuant to Local Rule 56.1 must be "short and concise" and "must be followed by citation to evidence which would be admissible[.]" The Court must disregard counterstatements that "fails to refer to any evidence in the record to support [Plaintiff's] contention that certain facts are disputed." *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 656, 661-62 n.5 (S.D.N.Y. 2011). *See also Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir.1996) (disregarding counterstatements consisting of "conclusory allegations, speculation or conjecture.").
Additionally, any declarations or affidavits provided "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.

1

Plaintiff is an African American man. ECF No. 56-1, Pl.'s SMF at ¶ 157. Plaintiff was employed by Riverbay as a non-Probationary Lobby Attendant from November 2014 until he voluntarily resigned in September 2017 to take another job. ECF No. 54, Def.'s SMF at ¶ 2. Around January 30, 2019, Defendant rehired Plaintiff as a Probationary Lobby Attendant. *Id.* at ¶ 7. Plaintiff's offer letter provided that he was subject to a 12-month probationary period, during which his employment could be terminated without cause. *Id.* at ¶ 9. Plaintiff also received a copy of Defendant's Employee Handbook and a union contract. *Id.* at ¶¶ 10, 12. The union contract also that stated that employees could be terminated during a probationary period with or without cause *Id.* at ¶ 14.

Chief Joseph Riley is the Riverbay Chief of the Department of Public Safety who supervised all department employees via the Lobby Attendant Supervisors. *Id.* at ¶¶ 16-17, 19. Chief Riley is a white man. Pl.'s SMF at ¶ 180. In or about May of 2019, Yamara Baez was Lead Lobby Attendant Supervisor. Def.'s SMF at ¶ 18. Mr. Dingle reported to Lobby Attendant Supervisors Baez, Elizabeth Penn, and Andrew Quinlan. *Id.* at ¶ 8; ECF No. 60-1, Exhibit 1 at 75-76. Ms. Baez supervised Mr. Quinlan and Ms. Penn. Pl.'s SMF at ¶ 162. Ms. Baez and Ms. Penn are Hispanic women. *Id.* at ¶ 163; Def.'s SMF at ¶ 142. Riverbay's Director of Human Resources Inelle Cooper is a black woman. Def.'s SMF at ¶¶ 96, 143.

Employees were prohibited from using their personal vehicles after they scanned in to work, required to scan in at assigned locations, and required to scan out before using their personal vehicles. *Id.* at ¶ 20. Lobby Attendants were only permitted to clock in at four locations and were prohibited from clocking in at other locations, including the garage. *Id.* at ¶ 24.

---

R. Civ. P. 56(c)(4). The Court must disregard facts that are unsupported by the record, contradict prior testimony, and are based on inadmissible evidence, such as hearsay.

Supervisors had discussions with Lobby Attendants that violated rules to prevent future violations. *Id.* at ¶¶ 29-30.

Supervisors could report discipline issues to Chief Riley, and only Chief Riley could authorize an investigation that could result in discipline up to and including termination. *Id.* at ¶¶ 32, 44. Misconduct and discipline was memorialized in Disciplinary Action Reports (DARs), and Chief Riley authorized DARs. *Id.* at ¶¶ 37-38, 43. Defendant maintained a six-step progressive discipline policy for infractions. Pl.'s SMF at ¶ 283. However, "[s]erious and severe conduct, such as theft of time, operating a personal vehicle while on duty, being off post, purposely recording untrue items or times in official business records, are grounds for termination without prior warnings or discipline." Def.'s SMF at ¶ 41. "Certain infractions and violations of policies, such as theft of time, being outside their assigned post, or operating a personal vehicle, when committed by probationary employees, result in immediate termination." *Id.* at ¶ 42; ECF No. 63-6, Exhibit F at 110-111. Lieutenants Frankie Torres and Pamela Apollo were Integrity Control Officers ("ICO") who conducted investigations into discipline and quality control issues within the Public Safety Department. Def.'s SMF at ¶ 34. Lieutenant Apollo is not African American. Pl.'s SMF at ¶ 209.

Supervisors spoke to Plaintiff about not following Riverbay's uniform policy. Def.'s SMF at ¶¶ 50-51. They also spoke to Plaintiff about his tardiness. *Id.* at ¶ 51. The Lobby Attendant Command and individual supervisors maintained logbooks and documented multiple instances in which they reminded Lobby Attendants to stay in camera view, and about Riverbay's policies on breaks, uniforms, and punching out. *Id.* at ¶ 51. During Lobby Attendants' shifts, the Attendants were entitled to an hour-long meal break and two 20-minute breaks per shift and were allowed to leave their assigned stations. Pl.'s SMF at ¶¶ 241-244.

Lobby Attendants were not required to punch out during their breaks, but they were required to notify their supervisors for coverage and wait to leave, and maintain accurate time logs in their logbooks. Def.'s SMF at ¶¶ 47, 51, 114. Ms. Baez testified that Lobby Attendants had discretion as to when they use the restroom or if they needed breaks for legitimate reasons or emergencies, and they were not disciplined for these breaks. ECF No. 63-8, Exhibit H at 138-141. Chief Riley testified that posts were unattended during limited or emergency circumstances, such as transit delays or when a Lobby Attendant was not assigned to a post. ECF No. 63-3, Exhibit C at 71-74. Ms. Baez testified that posts were unattended for at least an hour when Lobby Attendants went to lunch. ECF No. 60-3, Exhibit 3 at 31.

On July 26, 2019, Ms. Baez observed Plaintiff pretending to punch in at the Administrative Office time clock. Def.'s SMF at ¶ 52; ECF No. 55-5, Exhibit E at 107-114. On July 31, 2019, Ms. Baez reported her observation of Plaintiff pretending to punch in to Chief Riley, and Chief Riley then ordered an investigation into Plaintiff's alleged misconduct. Def.'s SMF at ¶¶ 52-53, 55-56. A review of Plaintiff's records showed he had punched in at a garage on that date. *Id.* at ¶¶ 53-54. Chief Riley directed Ms. Baez to inform Lieutenant Apollo to observe Plaintiff and investigate his conduct. *Id.* at ¶ 56.

Lieutenant Apollo completed her investigation into Plaintiff pretending to punch on July 26, 2019, and afterward she spoke with Ms. Baez on July 31, 2019 about Plaintiff, ECF No. 63-4, Exhibit D at 122-123. Lieutenant Apollo then emailed Chief Riley and his second in command Captain David Perez: "I conferred with lobby attendant supervisors Baez and Quinlan and they feel as though [Dingle's] termination is the best option." Pl.'s SMF at ¶ 207. Ms. Cooper testified that it was "less typical, for supervisors who were not the person's direct supervisor to be expressing an opinion about terminating an employee[.]" *Id.* at ¶ 210, ECF No. 60-7 at 83-84.

4

Ms. Cooper testified that it was not standard procedure to discuss termination at the beginning of an investigation. Pl.'s SMF at ¶ 211.

Defendant employees did not interview Mr. Dingle, but asserted that the evidence "clearly established his policy violations." Def.'s SMF at ¶ 59; ECF No. 63-3, Exhibit C at 30-31; ECF No. 63-4, Exhibit D at 94. Chief Riley testified he did not believe it necessary to interview Plaintiff due to the facts uncovered during the investigation. ECF No. 63-3 at 30-31.

In his deposition, Plaintiff admitted that on the day in question, he "acted like [he] was scanning out" of his designated area to clock in and out, Def.'s SMF at ¶ 65, and admitted he "always used to clock" in and out of Garage 4, *id.* at ¶ 66. On July 28, 2019, Ms. Penn drafted and issued a performance evaluation to Plaintiff regarding his probationary period and met with supervisors regarding the evaluation. *Id.* at ¶¶ 72, 74, Pl.'s SMF at ¶181. Ms. Penn resigned in August 2019. *Id.* at ¶¶ 136, 144.

After Plaintiff contacted his union representative, Charles Thomas, in August 2019 regarding the scoring of his performance evaluation, Ms. Cooper, Lieutenant Apollo, Plaintiff, and Mr. Thomas met on August 21, 2019 and discussed Plaintiff's performance evaluation. *Id.* at ¶¶ 95-97. Defendant employees allege that at this meeting Plaintiff did not make allegations or complaints of discrimination by Riverbay or its employees. *Id.* at ¶ 98. However, Mr. Dingle testified during his deposition that at this meeting, he stated "that I felt I was being . . . discriminated against by Elizabeth Penn by ways of her actions toward me and the way she acted towards other Hispanics, which she treated them proper . . . [t]he way everyone should be treated, but she had a problem with most of us, especially me, the blacks that was working under her care." ECF No. 60-1 at 83.

In his Complaint, Plaintiff expressed his belief that Hispanic employees were treated differently than employees of other races because he believed that other employees were not disciplined for misconduct. Def.'s SMF at ¶ 145.[2]

At the meeting, Ms. Cooper determined that Plaintiff was incorrectly given a failing score in the performance evaluation, and Riverbay did not use the form after Plaintiff raised his concerns. *Id.* at ¶¶ 94, 99. Ms. Cooper testified that Plaintiff's "review was invalid in that the wrong form was used, and the complete number of questions was not present or evidenced on the form[.]" ECF No. 63-6 at 74-75. Ms. Cooper then informed Chief Riley about Plaintiff's concerns regarding the form and score. Def.'s SMF at 96-97. Defendant employees did not consider Plaintiff's evaluation during the investigation. *Id.* at ¶ 134.

The investigation uncovered evidence of Plaintiff on August 21, 2019 punching in and out of unauthorized locations and punching in early, *id.* at ¶¶ 101-106, and leaving his post early to go to his car, *id.* at ¶¶ 107-108. On August 21, 2019, Ms. Penn spoke with Plaintiff about his operating a vehicle while on duty, and told him he could not go to his car or leave his post early. *Id.* at ¶ 107. On August 23, 2019 and August 28, 2019, Plaintiff took a longer meal break to go to his car, *id.* at ¶¶ 115-118. Lieutenant Apollo observed Plaintiff's conduct on August 28, 2019, found he had falsely logged that he was at his post during that time, and reported the incident to Chief Riley. *Id.* at ¶¶ 117-119. Plaintiff testified that he took a longer meal break to go to his car on August 21, 23, and 28 of 2019 in order to go to his storage unit to move his belongings to his apartment. ECF No. 60-1, Exhibit 1 at 125-126.

---

[2] Mr. Dingle testified that Anthony Gonzalez, a Hispanic Lobby Attendant, routinely punched in at a time clock far from his workstation and then drove to his workstation in his personal vehicle. Def.'s SMF at ¶ 263. However, Defendants have provided documentation that on March 21, 2019, Ms. Penn informed Mr. Gonzalez that the use of his vehicle while on duty was not permitted. ECF No. 55-19, Exhibit S.

Chief Riley had conversations with Ms. Cooper, Lieutenant Apollo, and Ms. Baez about Plaintiff's violations and terminating Plaintiff. *Id.* at ¶ 124; ECF No. 60-2 at 65-66; ECF No. 60-7 at 53-55. Chief Riley informed Ms. Cooper and the General Manager Robert Klehammer of his decision to terminate Plaintiff. Def.'s SMF at ¶ 125.

On October 16, 2019, Plaintiff met with Chief Riley, Lieutenant Apollo, Ms. Baez and union representative Joseph Monahan, where he was issued a DAR and Chief Riley terminated Plaintiff before the end of his probationary period due to violations of Defendant's policies. *Id.* at ¶¶ 128-133. The DAR detailed Plaintiff's theft of time, being out of his assigned area, operating a private vehicle while on duty without authorization, failure to follow instructions, leaving his post without permission, and violating company rules and policy. *Id.* at ¶ 129. Under Riverbay's policies, Plaintiff's conduct was severe and grounds for termination without prior warnings or discipline. *Id.* at ¶ 41. Chief Riley asked Plaintiff if there were any mitigating circumstances that needed to be considered, and Plaintiff did not provide any. *Id.* at ¶¶ 128, 130-131.

## II.     Procedural History

Plaintiff initiated this action on February 16, 2021. ECF No. 1. Defendant moved for summary judgment on March 3, 2023. ECF No. 52. Plaintiff filed his opposition on March 27, 2023. ECF No. 56. Defendant filed its reply on April 3, 2023. ECF No. 61. This matter is fully briefed.

## STANDARD OF REVIEW

### I.     Summary Judgment

Per Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See*

7

*Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988) (citations omitted). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of

8

material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations.

## DISCUSSION

### I.  Plaintiff's Discrimination Claims Must Be Dismissed.

Plaintiff has alleged race and color discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. § 1981; NYSHRL and the New York City Human Rights Law, New York City Administrative Code § 8-502 *et seq.* ("NYCHRL").

Title VII, 42 U.S.C. § 1981, NYSHRL, and NYCHRL discrimination and retaliation claims are analyzed under the three-part burden shifting scheme the Supreme Court set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03 (1973). *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (stating that Title VII and NYSHRL claims are governed by the *McDonnell Douglas* standard); *Ruiz v. Cty. of Rockland*, 609 F.3d. 486, 491 (2d Cir. 2010) (Section 1981 claims); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL and NYCHRL claims). Under *McDonnell Douglas*, the plaintiff bears an initial burden of "proving by the preponderance of the evidence a prima facie case of discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a *prima facie* case of discrimination or retaliation, a presumption of discrimination or retaliation arises and the burden shifts to the defendant to offer a legitimate non-discriminatory or non-retaliatory reason for the adverse action. *Sharpe v. MCI Commc'ns Servs., Inc.*, 684 F.Supp.2d 394, 401 (S.D.N.Y. 2010) (citing *Stratton v. Dep't for the Aging*, 132 F.3d 869, 879 (2d Cir. 1997)). If the defendant is able to offer a legitimate basis for the decision, the plaintiff must then establish that the proffered nondiscriminatory reason was pretextual and that the defendant's act was at least partially

9

motivated by discrimination. *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 93–94 (2d Cir. 2001).

Title VII prohibits discrimination on the basis of an "individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2. To establish a *prima facie* case of discrimination under Title VII, § 1981, and the NYSHRL, a plaintiff must show that: "(1) []he is a member of a protected class; (2) []he is qualified for [his] position; (3) []he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (internal quotation marks and citation omitted).[3] Plaintiff's Complaint must provide the "bits and pieces of information" necessary "to support an inference of discrimination, i.e., a mosaic of intentional discrimination[.]" *Id.* at 86 (internal quotation marks and citation omitted). "[A]bsent direct evidence of discrimination," the four-part test "must be plausibly supported by facts alleged in the complaint[.]" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). A plaintiff must adequately allege that his protected characteristic "was a motivating factor in [Defendant's] decision to" terminate him. *Gong v. City Univ. of N.Y.*, 846 F. App'x 6, 8 (2d Cir. 2021). The standard under the NYCHRL requires a plaintiff must plead "that []he is treated 'less well'— because of a discriminatory intent." *Mihalik*, 715 F.3d at 110.

In this case, Plaintiff is an African American man and is therefore a member of a protected class under Title VII, § 1981, and the NYSHRL. As to the second prong, to establish qualification, "all that is required is that the plaintiff establish basic eligibility for the position at

---

[3] With respect to the NYCHRL standard, "[c]laims brought under the NYCHRL are analyzed using the same framework as Title VII and NYSHRL claims, but must be viewed independently from and more liberally than their federal and state counterparts." *Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734 (DLC), 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020) (internal quotation marks and citations omitted). Under the NYCHRL, "the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

issue." *Kaboggozamusoke v. Rye Town Hilton Hotel,* 370 Fed. App'x. 246, 248 n.1 (2d Cir. 2010) (citation omitted). "[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (alteration, citations and internal quotation marks omitted). "However, a trail of negative performance reviews can serve as evidence that a plaintiff is not qualified for his position." *Weber v. City of N.Y.*, 973 F. Supp. 2d 227, 253 (E.D.N.Y. 2013) (collecting cases). A plaintiff cannot establish that he performed his duties satisfactorily when defendant "offered a trail of performance reviews and improvement plans that document plaintiff's deteriorating performance." *Bailey v. Frederick Goldman, Inc.*, No. 02 CIV. 2429 (TPG), 2006 WL 738435, at *3 (S.D.N.Y. Mar. 23, 2006). *See also Krause v. Lancer & Loader Grp.*, LLC, 40 Misc. 3d 385, 388, 965 N.Y.S.2d 312, 316 (Sup. Ct. 2013) (plaintiff failed to meet second prong due to documented poor job performance). "Where, as here, an employer presents evidence of unsatisfactory work performance as a legitimate reason for an adverse employment action, a plaintiff must rebut those reasons to survive a summary judgment motion." *Rivera v. Greater Hudson Valley Health Sys. (Now Known as Garnet Health)*, No. 21-CV-1324 (NSR), 2023 WL 2588308, at *11 (S.D.N.Y. Mar. 21, 2023) (citing *Wheeler v. Corp. Couns. of N.Y.C.*, No. 93 CIV. 5184 (NRB), 2000 WL 1760947, at *5 (S.D.N.Y. Nov. 30, 2000), *aff'd*, 28 F. App'x 90 (2d Cir. 2002)). *See also Barbini v. First Niagara Bank N.A.*, No. 16 CIV. 7887 (NSR), 2022 WL 623184, at *16 (S.D.N.Y. Mar. 3, 2022) (plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not the discrimination was the real reason for the employment action.") (citation omitted).

The parties disagree on whether Plaintiff was qualified for his position. Defendant argues Plaintiff was not qualified for the probationary Lobby Attendant position because he did not perform his duties satisfactorily, and points to documentary evidence of Plaintiff's repeated violations of Riverbay policies. ECF No. 61 at 9-10. Plaintiff alleges he was qualified because he held a Lobby Attendant role at Riverbay from 2014 to 2017. ECF No. 57 at 28 n.57. However, Plaintiff's relevant period of employment is 2019 as a probationary Lobby Attendant, not 2014-2017 as a non-probationary Lobby Attendant. Defendant has provided ample evidence of Riverbay employees giving Plaintiff verbal warnings about his misconduct such as tardiness, keeping inaccurate time logs, and failing to follow instructions, and photographs documenting said misconduct.[4] "Because Plaintiff fails to point to evidence on the record . . . contradicting the documentary evidence on the record, the Court finds that Plaintiff has not adequately rebutted Defendant[s'] arguments that he was [not] qualified for his position." *Rivera*, 2023 WL 2588308, at *11.

Plaintiff has not met his burden to establish that he performed his duties satisfactorily to be qualified for the probationary Lobby Attendant position at Riverbay.

Plaintiff must establish that he suffered an adverse employment action. For the purposes of this motion, the Court will accept the contention that Plaintiff suffered an adverse employment action when he was terminated from his job, either in retaliation for engaging in a protected activity, or because he belonged to a protected class. Plaintiff has not plausibly alleged that he suffered other adverse employment actions.[5]

---

[4] The Court notes that Ms. Penn issued Plaintiff a negative performance review on July 28, 2019. Def.'s SMF at ¶¶ 72, 74. However, Ms. Cooper determined that Plaintiff was incorrectly given a failing score in the performance evaluation, *id.* at ¶¶ 94, 99; ECF No. 63-6 at 74-75, and Defendant employees did not consider Plaintiff's evaluation during the investigation. *Id.* at ¶ 134.

[5] Plaintiff alleges another adverse employment action was the investigation that led to his ultimate termination. For reasons that will be explored later in this opinion, he has not established that the investigation was an adverse employment action.

12

Mr. Dingle also fails to meet the final prong showing that the circumstances of his termination give rise to an inference of discrimination. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Defendant contends that the Complaint fails to allege a causal connection between the adverse action (termination) and a discriminatory motive on race or color. Plaintiff appears to alleges that he was treated differently from and less preferably than similarly situated Lobby Attendants. Mr. Dingle alleges that Riverbay treated Hispanic employees differently than employees of other races because he believed that other employees were not disciplined for misconduct. Def.'s SMF at ¶ 145. Plaintiff also allegedly informed Ms. Cooper, Lieutenant Apollo, and Mr. Thomas at the August 21, 2019 meeting regarding his performance evaluation "that I felt I was being . . . discriminated against by Elizabeth Penn by ways of her actions toward me and the way she acted towards other Hispanics, which she treated them proper . . . [t]he way everyone should be treated, but she had a problem with most of us, especially me, the blacks that was working under her care." ECF No. 60-1 at 83. Defendant employees dispute this claim, and allege that at this meeting Plaintiff did not make allegations of discrimination by Riverbay or its employees. Def.'s SMF at ¶ 98.

"An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz*, 609 F.3d at 493–94 (internal quotations omitted). *See also Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (same). "In the Second Circuit, whether or not co-employees report to the

13

same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated." *McDowell v. T-Mobile USA, Inc.*, No. CV-04-2909 DGT, 2007 WL 2816194, at *9 (E.D.N.Y. Sept. 26, 2007), *aff'd*, 307 F. App'x 531 (2d Cir. 2009) (quoting *Conway v. Microsoft Corp.*, 414 F.Supp.2d 450, 465 (S.D.N.Y. 2006)). Here, Plaintiff alleges he felt his supervisor Ms. Penn discriminated against him and other black Lobby Attendants. ECF No. 60-1 at 83. Mr. Dingle's allegation of discrimination does not pass muster. Plaintiff has not provided documentary evidence in support of his claim, nor cited to testimony in his deposition supporting his claim. Plaintiff has not established sufficient comparators because he has not shown that other non-black similarly situated Lobby Attendants supervised by Ms. Penn were subject to different more favorable treatment. Further, even if Ms. Penn acted in a discriminatory manner, Plaintiff has failed to plead a causal connection between Ms. Penn's alleged discrimination and his termination. Ms. Penn resigned in August 2019 and was not involved in the investigation or decision to terminate Plaintiff. Def.'s SMF at ¶¶ 136, 144.

In addition, Plaintiff is a probationary Lobby Attendant, and appropriate comparators are other probationary employees. Probationary and permanent employees not similarly situated. *Balogun v. New York State Div. of Hum. Rts.*, No. 20 CIV. 10484 (LGS), 2022 WL 4292704, at *4 (S.D.N.Y. Sept. 16, 2022), *aff'd*, No. 22-2756, 2023 WL 8446743 (2d Cir. Dec. 6, 2023) (citing *Woods v. Newburgh Enlarged City Sch. Dist.*, 288 F. App'x 757, 760 (2d Cir. 2008); *see also Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004) (same). "[A]ny similarly situated employee would have to be a probationary employee" because a "probationary employee is subject to being disciplined or terminated in a fundamentally different manner than permanent employees" *Senese v. Longwood C. Sch. Dist.*, 330 F. Supp. 3d 745, 767 (E.D.N.Y. 2018).

Plaintiff has not provided evidence of another similarly situated non-African-American probationary Lobby Attendant who engaged in a similar number of serious policy violations who did not face discipline or was treated more favorably than Plaintiff was. Plaintiff alleges Mr. Gonzalez, a Hispanic Lobby Attendant, routinely punched in at a time clock far from his workstation and then drove to his workstation in his personal vehicle. Def.'s SMF at ¶ 263. However, Mr. Gonzalez is not a probationary employee and thus not a proper comparator. Even so, Defendants have provided documentation that Ms. Penn warned Mr. Gonzalez that the use of his vehicle while on duty was not permitted. ECF No. 55-19, Exhibit S.

"To be considered similarly situated, an individual must have been treated more favorably by the same decisionmaker that dealt with the plaintiff." *Baity v. Kralik*, 51 F. Supp. 3d 414, 447 (S.D.N.Y. 2014) (internal quotation marks and citation omitted). Here, only Chief Riley could authorize an investigation that could result in discipline up to and including termination. Def.'s SMF at ¶ 44. Plaintiff has not alleged Chief Riley discriminated against him on the basis of his race or color. Even if the Court were to find Plaintiff established discrimination by another decision-maker, that misconduct could not show that Chief Riley was motivated by the other decision-maker's discriminatory beliefs. *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007).

When examining the totality of the circumstances, Plaintiff has not shown that his termination was motivated by discrimination. Because Plaintiff has not met his burden to establish a *prima facie* case of discrimination, the Court need not reach further analysis under the *McDonnell Douglas* test. Thus Plaintiff has failed to plead facts necessary to support his discrimination claims under Title VII, § 1981, NYSHRL and NYCHRL.

II.     **Plaintiff's Retaliation Claims Must Be Dismissed.**

Plaintiff brings retaliation claims under Title VII, § 1981, the NYSHRL, and NYCHRL.

### a. Title VII, §1981, and NYSHRL.

To state a *prima facie* claim for retaliation under Title VII, §1981, and the NYSHRL, a plaintiff must demonstrate that: (1) he participated in a protected activity; (2) the defendant was aware of his protected activity; (3) he suffered an "adverse employment action;" and (4) there is a causal connection between the protected activity and the adverse employment action. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). A causal connection is established "by showing that the protected activity was followed closely by the discriminatory treatment." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (internal quotation marks and citations omitted). An employee engaged in a "protected activity" "'need not establish that the conduct he opposed was in fact a violation of Title VII,' but rather, only that he had a 'good faith, reasonable belief' that the underlying employment practice was unlawful." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). "A mere mention of feeling 'discriminated against' is not enough to put an employer on notice of a protected complaint if 'nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory.'" *Moore v. City of N.Y.*, 745 F. App'x 407, 409 (2d Cir. 2018) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013)).

In this case, Plaintiff posits that he engaged in a protected activity. In his deposition, he alleged that at the August 21, 2019 meeting he expressed discrimination concerns regarding Ms. Penn. ECF No. 60-1 at 83. Defendant employees allege that at this meeting Plaintiff made no discrimination complaints against Riverbay or its employees. Def.'s SMF at ¶ 98. Even if

16

Plaintiff had expressed discrimination concerns, they lacked a sufficient level of detail to constitute a protected activity.

Taken as true, Plaintiff's statement at the meeting was too vague for a fact-finder to decide Mr. Dingle was retaliated against for his statement. Plaintiff allegedly stated that he felt he was being discriminated against by Ms. Penn "by ways of her actions toward" him compared to "the way she acted towards other Hispanics, which she treated them proper[.]" ECF No. 60-1 at 83. Plaintiff believed she "had a problem with most of us, especially" him and black employees. *Id.* This broad statement lacks sufficient details to even infer that he believed Ms. Penn was discriminatory on the basis of race. Plaintiff does not explain which actions Ms. Penn took that lead him to believe he was being treated unfavorably.

Even if Plaintiff's statement at the meeting qualified as a protected activity, it lacks a causal connection to an adverse employment action. Plaintiff alleges that in retaliation for his statement, Riverbay undertook an adverse employment action when it launched an investigation into Plaintiff's conduct, which resulted in his termination. However, only Chief Riley could order an investigation into Plaintiff's alleged misconduct. Def.'s SMF at ¶¶ 52, 55-56. He was not present at the August 21, 2019 meeting, and in fact, he ordered an investigation into Plaintiff's misconduct on July 31, 2019. *Id.* Because the investigation predated any discrimination concerns allegedly raised at the August 21, 2019 meeting, Plaintiff cannot establish a claim of retaliation under any statute and must be dismissed.

Plaintiff's retaliation claims under Title VII, §1981, and the NYSHRL must be dismissed for failure to allege a protected activity, or a connection to an adverse employment action.

      **b. NYCHRL.**

The NYCHRL standard is more lenient than the Title VII, 42 U.S.C. § 1981, and NYSHRL standard. To sustain a retaliation claim under the NYCHRL, Plaintiff must allege that "[]he took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. . . . [and] [u]nlike the but-for standard used under Title VII and the NYSHRL, the employer is liable if [he] was motivated *at least in part* by an impermissible motive." *Farmer v. Shake Shack Enters.,* 473 F. Supp. 3d 309, 334 n.8 (S.D.N.Y. 2020) (internal quotation marks and citations omitted). "[R]ather than requiring a plaintiff to show an 'adverse employment action,' [the NYCHRL] only requires [Plaintiff] to show that something happened that was 'reasonably likely to deter a person from engaging in protected activity.'" *Rozenfeld v. Dep't of Design & Constr.*, 875 F.Supp.2d 189, 208, 2012 WL 2872157, at *13 (E.D.N.Y. 2012) (citation omitted). Otherwise, the NYCHRL and NYSHRL requirements to establish retaliation are identical. *Id.*

For the same reasons stated above, Plaintiff has similarly failed to adequately plead participation in a protected activity under the NYCHRL, that Defendant undertook any conduct reasonably likely to deter a person from engaging in such an activity, and that he was subject to retaliation. The investigation into Plaintiff's conduct predated his alleged protected activity. Thus, Plaintiff's NYCHRL retaliation claim must also be dismissed.

### III. Plaintiff's Hostile Work Environment Claims Must Be Dismissed.

In evaluating a hostile work environment claim brought under Title VII or 42 U.S.C. § 1981, courts assess "the severity and pervasiveness of the alleged discriminatory behavior" using a set of nonexclusive factors, judging (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating; (4) whether the

conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (internal quotation marks, alterations, and citations omitted). *See also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (Title VII); *Lamarr-Arruz v. CVS Pharmacy, Inc.*, 271 F. Supp. 3d 646, 655 (S.D.N.Y. 2017) (42 U.S.C. § 1981). In order to succeed on a hostile work environment claim under Title VII or § 1981, a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris v. Forklift Syss., Inc.*, 510 U.S. 17, 21–22 (1993)). "[T]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Whidbee v.Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000).

At this stage, Plaintiff need not prove a prima facie case of hostile work environment. He need only make "a short and plain statement of the claim that shows that [he is] entitled to relief and that gives the defendant fair notice of [his] claim or hostile work environment and the grounds upon which that claim rests." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 241 (2d Cir. 2007). Even so, a plaintiff alleging a hostile work environment must bring forth more than a mere scintilla of evidence to survive a motion for summary judgment. The NYSHRL and the NYCHRL have a similar lower standard for showing hostile work environment. *See Mondelo*

19

*v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-02512 (CM), 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022). Under the NYCHRL, "[t]o prevail on liability, the plaintiff need only show differential treatment—that []he is treated 'less well'—because of a discriminatory intent. *Mihalik*, 715 F.3d at 110.

Here, Plaintiff has not provided sufficient support for his hostile work environment claim. Plaintiff has not shown that he was subjected to severe or pervasive hostility at Riverbay in connection with his race or color. There is no evidence supporting his claim of discrimination rising to the level of a hostile work environment, such as being subject to "intimidation, ridicule, and insult[.]" *Demoret*, 451 F.3d at 149. In his deposition, Plaintiff broadly asserted that he believed Ms. Penn was discriminating against him based on her actions, without providing any level of detail as to what Ms. Penn's purported actions were. ECF No. 60-1 at 83. Nor has he shown that he was treated "less well" by Defendant due to discriminatory intent. *Mihalik*, 715 F.3d at 110. Therefore, Plaintiff's hostile work environment claim must also be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to for summary judgment, ECF No. 52, is hereby **GRANTED**. Plaintiff's Complaint is **DISMISSED** with prejudice pursuant to Fed.R.Civ.P. 56. The Clerk of the Court is respectfully directed to close the open motion at ECF No. 52.

**SO ORDERED.**

Dated: March 29, 2024
    New York, New York

                              **ANDREW L. CARTER, JR.**
                              **United States District Judge**